# AFFIDAVIT OF ROBERT BOSKEN
# IN SUPPORT OF A CRIMINAL COMPLAINT

I, Robert Bosken, being duly sworn on oath, do hereby make the following affidavit in application for and in support of a Criminal Complaint:

1.  I am a Special Agent for the U.S. Department of Veterans Affairs, Office of Inspector General (VA-OIG), and have been so employed since 2010. As a Special Agent of the VA-OIG, I am a federal law enforcement agent, authorized to investigate criminal offenses relating to the U.S. Department of Veterans Affairs (VA). Prior to joining the VA-OIG, I was employed as a Special Agent with the U.S. Postal Service, Office of Inspector General for approximately six years. During my law enforcement career, I have directed investigations involving embezzlement, theft, and health care fraud and I have received training pertaining to these investigations.

2.  The facts set forth in this affidavit were gathered in the course of an investigation conducted by VA-OIG. The facts set forth herein are either personally known to me or have been provided to me by agents, investigators, and analysts involved in the investigation. This affidavit is submitted in support of an application for a Criminal Complaint against RICCARDO D'ORSAINVILLE ("D'ORSAINVILLE"), also known as "Riccardo Lloyd-D'Or." Because this affidavit is submitted for the limited purpose of obtaining a Criminal Complaint against D'ORSAINVILLE, I have not included each and every fact known to me and to other law enforcement officers working in this investigation. Instead, I have included only those facts which I believe are necessary to establish the existence of probable cause to support the requested Criminal Complaint.

3.  Based on the information contained in this affidavit, I have probable cause to believe that D'ORSAINVILLE, embezzled, stole, obtained by fraud, or otherwise without

1

authority knowingly converted to the use of any person other the rightful owner or intentionally misapplied property that was valued at $5,000 or more, and was owned by, or under the care, custody, or control of an organization, government, or agency which receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, in violation of Title 18, United States Code, Section 666.  Specifically, based on this investigation, I have probable cause to believe that from about July 2012 until about January 2013, D'ORSAINVILLE defrauded the Boston Veterans Administration Research Institute, Inc. ("BVARI") by fraudulently opening corporate accounts in its name and diverting and depositing funds received from the Massachusetts College of Pharmacy and Health Sciences and the United States Treasury into those accounts.  D'ORSAINVILLE then made withdrawals and debit card purchases on those accounts for his own benefit.  In total, D'ORSAINVILLE embezzled 20 checks and misappropriated an aggregate total of approximately $68,000 in funds intended for BVARI.

4.      Riccardo D'ORSAINVILLE is originally from Haiti; he is a permanent resident of the United States.  D'ORSAINVILLE has used several aliases, including, "D'Orsainvil," "Dorsainvile," and "Lloyd-D'Or."  D'ORSAINVILLE has one prior federal conviction in the District of Massachusetts, Criminal No. 01-10212-JLT, and one state conviction in Suffolk Superior Court, Docket No. 09-10534001-007, for fraudulent activity similar to the scheme described in this Complaint Affidavit.

5.      BVARI is a non-profit, tax-exempt institute under Title 38, United States Code, Section 501(c)(3), whose purpose is to conduct medical research and educational activities of the VA Boston Healthcare System.  Its offices are within the VA's Medical Center, located at 150 Huntington Avenue, Boston, Massachusetts ("VAMC").  BVARI receives in excess of $10,000

2

per year from federally-funded grants, contracts, loans, and other forms of federal financial assistance.

6. During the course of this investigation, I interviewed employees and management at BVARI and learned the following information. D'ORSAINVILLE was hired under the name "Riccardo Lloyd-D'Orsainville" as a temporary employee in August 2011 through a placement agency, KNF&T. While working at BVARI, D'ORSAINVILLE used the name "Riccardo Lloyd-D'Or." D'ORSAINVILLE was originally hired to assist with the August 2011 business meeting, but later became the Executive Administrator for BVARI. D'ORSAINVILLE worked in an administrative role for the Chief Executive Officer by helping to prepare for meetings, writing the minutes for each meeting, and collecting the mail. He spent 75% of his time working for the CEO and 25% of his time working with BVARI's Human Resources Department.

7. Because of BVARI's internal controls, someone outside of the finance department had to deposit any checks BVARI received. D'ORSAINVILLE became responsible for this task. Initially, D'ORSAINVILLE hand delivered the checks to the bank or mailed the checks using Fed Ex. At some point, BVARI began to hand deliver the checks rather than mail them. As part of his duties, D'ORSAINVILLE picked up BVARI mail, brought any checks to his desk within BVARI, opened the envelopes, prepared the checks for deposit, and documented the checks he processed in a spreadsheet.

8. One of BVARI's funding sources came from its assistance to the Massachusetts College of Pharmacy and Health Sciences' preceptorship program, in which the college sent students studying to become physician assistants to BVARI to serve an "internship" at the VAMC. BVARI placed the interns with VAMC medical staff and received payments for the training opportunity from the Massachusetts College of Pharmacy and Health Sciences. The

checks from the Massachusetts College of Pharmacy and Health Sciences were "hard checks" and arrived from one of two Massachusetts College of Pharmacy and Health Sciences campuses. BVARI relied on D'ORSAINVILLE to track the incoming payments in his spreadsheet and deposit the funds.

9. In December 2012, BVARI personnel began to notice they had not received as many funds from the Massachusetts College of Pharmacy and Health Sciences as they expected. On December 31, 2012, the BVARI financial analyst approached D'ORSAINVILLE and asked him if he had seen any Massachusetts College of Pharmacy and Health Sciences checks. D'ORSAINVILLE provided the financial analyst with documentation purporting to capture all of the checks he had received and deposited on BVARI's behalf.

10. On January 3, 2013, BVARI received a Fed Ex envelope which contained an ATM card from Citizens Bank in BVARI employee "H.B.'s" name. "H.B." had not opened any Citizens Bank accounts for BVARI. Because D'ORSAINVILLE was out of the office on sick leave that day, "H.B." sent D'ORSAINVILLE a text message asking him about the Citizens Bank account. D'ORSAINVILLE responded that he had opened the account and would discuss the matter in more detail when he returned to the office. BVARI's CEO later called Citizens Bank and froze the account because it had never been authorized by BVARI.

11. On January 9, 2013, BVARI received an overdraft notice for $3,500 from the unauthorized Citizens Bank account D'ORSAINVILLE had acknowledged opening in "H.B.'s" name. When "H.B." and other BVARI personnel contacted Citizens Bank, they learned that the over-drafted account (Account No. xxxxxx6483) had been opened on September 27, 2012. Citizens Bank personnel informed BVARI that Account No. xxxxxx6483 was originally funded by another BVARI account (Account No. xxxxxx6750).

12. According to Citizens Bank personnel, for a business account, Citizens Bank requires documentation showing an individual is authorized by the corporation to open up accounts, such as a signed corporate resolution. The potential customer is also required to provide copies of identification documents for the remaining individuals on the business account, such as a driver's license. Citizens Bank does not keep copies of the licenses, nor does it verify the signers for the business account.

13. During the course of this investigation, I learned that at D'ORSAINVILLE's request, a Citizens Bank Business Banking Officer met D'ORSAINVILLE at his "office" at the VAMC in Jamaica Plain to discuss what documents would be needed to open a business account. D'ORSAINVILLE provided the documents, including BVARI bylaws, IRS tax-exempt status documentation, and signed signature cards. When D'ORSAINVILLE later opened the second BVARI Citizens Bank business account (Account No. xxxxxx6483), Citizens did not need any additional documents because none of the information had changed from the initial BVARI account (Account No. xxxxxx6750). D'ORSAINVILLE later provided Citizens Bank with an updated Business Signature Card authorizing "H.B.'" to replace another BVARI employee as an authorized signatory, and provided a copy of "H.B.'s" driver's license.

14. I have reviewed the records relating to both BVARI Citizens Bank accounts (Account No. xxxxxx6750 and Account No. xxxxxx6483). I have learned that the initial BVARI account (Account No. xxxxxx6750) was opened on July 13, 2012. The signature of the Authorized Signer is not legible. There was a $14,000 deposit (consisting of two $7,000 checks from Massachusetts College of Pharmacy and Health Sciences) made to the account on July 13, and another $9,000 deposit (consisting of four checks from Massachusetts College of Pharmacy and Health Sciences) on July 19. All of the withdrawals on the July 2012 statement were made

by debit purchase or ATM withdrawals – including a $1,287 purchase from Men's Wearhouse in Boston, and a $782.95 purchase from Milk Street Café. In total, between July and December 2012, there were 18 checks from Massachusetts College of Pharmacy and Health Sciences, worth $66,000, deposited to this account, some dating back to March and April 2012. The stamped endorsements on these checks say "FOR DEPOSIT ONLY BOSTON VA RESEARCH INSTITUTE," but bear no signature. In contrast, two United States Treasury checks made out to BVARI were deposited on August 7, 2012. One of these checks, in the amount of $1,884.48, bears the handwritten endorsement: "BVARI Pay to the order of R.Dorsainville."

15.  The second BVARI account (Account No. xxxxxx6483) was opened on September 27, 2012, using a $5,000 cash deposit. "H.B.'s" name was later added as an authorized signatory. There were two transfers in the amounts of $4,500 and $3,900 from the initial BVARI account (Account No. xxxxxx6750) to Account No. xxxxxx6483. However, in addition to debit card purchases, there were four checks written off of Account No. xxxxxx6483 in the amounts of $3,600.15, $3,700, $3,500, and $3,500 and made out to "James O'Neill." Citizens Bank issued debit cards in the name of "Riccardo Lloyd-D'Or," and later issued an additional debit card in the name of "H.B.," which was delivered to "H.B." on January 3, 2012 and prompted BVARI to freeze the unauthorized accounts.

16.  I have compared the BVARI spreadsheet D'ORSAINVILLE used to document checks he had received and deposited on BVARI's behalf with records relating to both BVARI Citizens Bank accounts. None of the 18 Massachusetts College of Pharmacy and Health Sciences checks or two Department of Treasury Checks deposited into Account No. xxxxxx6750 were documented on D'ORSAINVILLE's spreadsheet as funds received by BVARI.

17.     I have also reviewed video footage and digital photo captures corresponding to several ATM transactions identified on Citizens Bank statements for the initial BVARI account (Account No. xxxxxx6750). This video surveillance shows D'ORSAINVILLE making withdrawals from and depositing five Massachusetts College of Pharmacy and Health Sciences checks made payable to BVARI into Account No. xxxxxx6750 between August and December 2012.

18.     According to BVARI management and staff, D'ORSAINVILLE was not authorized to open any bank accounts on BVARI's behalf. D'ORSAINVILLE was also not authorized to use BVARI funds to make any purchases, without BVARI's prior approval. The BVARI employees listed as authorized signors for the account, including "H.B," did not have any knowledge the accounts were opened, did not have any control over the accounts, and were not aware of the purchases D'ORSAINVILLE was making using BVARI funds deposited into the accounts.

19.     Based on the information contained in this affidavit, I have probable cause to believe that D'ORSAINVILLE, embezzled, stole, obtained by fraud, or otherwise without authority knowingly converted to the use of any person other the rightful owner or intentionally misapplied property that was valued at $5,000 or more, specifically approximately $68,000, and was owned by, or is under the care, custody, or control of the Boston VA Research Institute, Inc., an organization, government, or agency which receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, in violation of Title 18, United States Code, Section 666.

20. Based upon the information set forth above, I respectfully request that a Criminal Complaint be issued for RICCARDO D'ORSAINVILLE, also known as "Riccardo Lloyd-D'Or."

Robert Bosken,
Special Agent, VA-OIG

Sworn to and subscribed before me this 2nd day of April, 2013.

MARIANNE B. BOWLER,
UNITED STATES MAGISTRATE JUDGE

8